I'm Claire Freeman today and I represent the appellant, Mr. Ronald Coleman. In a matter that boils down to basically two search warrants that are infirmed for multiple reasons and a fairly egregious set of violations of Mr. Coleman's property rights by unauthorized intrusion onto the curtilage of his home, including onto the private protected space of an exclusive enclave of residential homes, a housing complex that was very clearly set up to maintain the privacy of the residents. And so I'll start there because with these intrusions flow some of the infirmities for the warrants. So if the court finds that the police did indeed violate the Fourth Amendment by entering Mr. Coleman's driveway, entering his condominium complex. Can you distinguish between the two? Your brief uses the phrase, unlawful surveillance conducted from the private condo premises. That sounds like simply walking in to this place that has no gates, no guard station. It does have a sign that says private property, but every restaurant, every office building is private property too. Is that what you're calling unlawful surveillance? It's simply walking into the condo of any sort? Well, Your Honor, in here I do want to make sure that I'm clear on the distinctions. We do have two distinct violations. The one is the entry into the condominium complex, either in vehicles or walking, for purposes of surveillance. And what did they gather from that that got into the warrant? Things like there is a paragraph, and I have it in my notes if you'd like me to come to the exact citation, but where they observe Mr. Coleman's girlfriend leave the home and enter one of the vehicles, things like that. They're close enough to be observing the front door intimately, which is over a mile from any public thoroughfare from 68th Street, which is the last public thoroughfare before entry into the Sun Club. So they are observing the home with things like Mr. Coleman's girlfriend. That's not any of the particular drug deals that they... No, and that's part of the issue here is there is no allegation of any drug transaction, of any illegal conduct in the home. The warrant for the home, which perhaps I'll get to later, addresses things like the home being bought on land contract, the fact that the home belongs to Mr. Coleman and that he did purchase it on land contract. That his girlfriend leaves the home and enters this Buick Enclave that becomes subject of tracking in a tracking warrant. There is absolutely no allegation of a drug transaction occurring in the home or in this private complex. In support of the GPS tracking warrant? Is that what you're saying? For the nexus to the residential warrant itself, for the condominium, or for the tracking warrant. The tracking... But conversely, the evidence with respect to the drug deals doesn't come from what you call this unlawful surveillance. That happens elsewhere. Well, some of the unlawful surveillance... Yes, I see what you're saying. The tracking then is the second part of that. All I heard you say that what you called unlawful surveillance, separate from the GPS tracker, is seeing the girlfriend leave the home. Is that right? There were some other related allegations along those lines, but yes. And then it's the tracking that becomes extremely problematic because... And the facts are apparently what? They were standing in the area or they had driven their car in and were watching it from the car? I didn't quite get that part. For the tracking or for the surveillance? No, for the girlfriend. For the girlfriend? You say that they found this important piece of evidence by being inside the complex physically, right? That's what you're telling me. And I was just asking, do they simply walk in, stand there, drive in with the classic kind of cops at a distance with cameras or what? I do not have a clear picture of that in terms of whether it was a marked police car or unmarked. But given the exhibits that the government had at the motion hearing and that have been made a supplemental part of this record, and given some of the other photography that's in the record from the district court, I do believe they were in a vehicle. Some of those pictures are coming from a vehicle window with review mirrors and things. So I do believe that it was vehicular. And then we get to the second entry that's problematic here, not just the surveillance, but the application of the GPS tracking units. If I have a warrant to put a tracking device on a car, what does it let me do in terms of can I only then find the car in a public place if I don't have anything else in the warrant? As this warrant is written, yes. This warrant very clearly had a box that officers could have asked the magistrate judge to check that would have allowed them to enter private property to apply the warrant. That box was not checked. I mean, if it's a constitutional limitation we're talking about here, it's kind of odd that one could check a box and the magistrate could just waive that off. I mean, does that box thing actually make sense legally? I think so, because again, we'd have a detached magistrate judge determining whether or not there is probable cause to believe that this tracking would lead to the contraband, that would lead to evidence of a crime, and that there should be permission to enter into this protected Fourth Amendment space. But the protected part is kind of the query, isn't it? That is, I understand the affirmative permission. The government cites this Dahlia case where they did have a warrant that said you can enter private space, and the Supreme Court upheld it 6-3. But independent of that, the issue of whether something is curtilage, because we have this sort of oddity that if the car was parked two feet onto the driveway of a driveway that is private, but right up against the street, would you say that the policeman can't walk two feet on the driveway to attach it? And at the other end, we have a completely enclosed garage that Collins, in cases like that, would certainly say is curtilage. And aren't we sort of a little bit in between this? That is, it's relatively public. The other condo people can walk in. It's not enclosed. Or are you saying that without checking the box, I can't walk two feet off a public street into a private driveway? I'm saying it, and I believe the Supreme Court and Collins said it, and I believe that's one thing that... Why did Collins spend so much time on it being enclosed on three sides, it being beyond the first perimeter of the house, all of those things that I think would make an ordinary person think, yeah, this may be curtilage. Whereas two feet off the public street, most people would not say is curtilage, and I don't think the Supreme Court or any other court has really said is curtilage, have they? Do you have anything that says simply being private property makes it curtilage? No, because I do believe our test still remains fluid. I don't think there's a bright line rule that says curb is the line in the sand, or I don't think we have a line in the sand, that there is some sort of imprint in the cement. But I think that Justice Alito brought up this very issue. I can't quite quote him verbatim, but he said something like, why should walking just a few feet up the drive make the difference? This in Collins? In Collins, yes. But why isn't it just, it's whatever the Fourth Amendment allows you to do, you can do that, and if you can place the tracking device consistent with it. So in Hardinez, Justice Scalia says, well, Girl Scouts and trick-or-treaters can come onto your property, knock on the door, and leave, right? Police can knock and talk. If you have an implied license to be on the property to do certain things, why can't, while you're doing that, you just place the tracking device on the car? I think that just goes to Justice Scalia's point that, yes, the Girl Scout can sell cookies, but the gentleman with the metal detector oughtn't to be kind of flagging around your garden path. I could see a police officer. A license for what, right? It's a license to enter and do something you would expect the public. It depends on what the implied license is for, right? Absolutely, but I think a homeowner, I can't think of a homeowner that would imply a license to come and put something on my car, especially a GPS tracker. Sorry for the dumb question here. Can you remind me, what were they doing in Collins? Was this a tracker-type case? Collins was the case with the stolen motorbike up on the driveway and the issue of whether or not the automotive exception would allow the entry. It wasn't a warrant case. No, and it's not a tracking case. So a warrant is a judicial authorization to basically infringe upon privacy or other interests protected by the Fourth Amendment, right? And so if you have a warrant to search a house, you can do that. If you have a warrant to trespass in the manner otherwise forbidden by Jones, you can do that. And, I mean, it seems like we're cutting it pretty fine to say, okay, he had a warrant to do the trespass of attaching the object to the car. That intrusion on Fourth Amendment interest. But because he didn't check this other box, the warrant does not constitutionally allow him to walk 10 feet up this shared driveway. Do you follow me? I do, Your Honor, and I understand the amount of time, but I could answer very briefly. I do believe that there is a distinction. The warrant gives them the permission to trespass against the chattel of the vehicle, but it didn't give the permission to trespass against the sacrosanct house. And I think that we needed both there. Okay, that's a very concise answer.  We'll hear from the government. Thank you, Your Honor. Sally Behrens, on behalf of the United States, may it please the Court, maybe the best place to start is with the box on the warrant, which is, as the Court notes, a really curious thing. I've been trying to dig into it. There's no case law that talks about that particular box and the need for it. If you look back at the... Well, Ms. Freeman, I mean, just I think explained it pretty clearly, right? I mean, that's what it purports to be. I don't know that that's actually correct, because if you look back at the 2006 advisory notes, those are obviously pre-Jones, and they talk about... Advisory notes to what are we talking about? To Rule 41. Okay, so this is the Criminal Rules Committee now. Right, so they talk about when a beeper is entering private property. Now, remember, back when these forms were made... Now, this committee does nothing about substance, but go ahead. Okay. I mean, I can assure you, nothing the Criminal Rules Committee says has anything to do with Constitution. Let me explain it this way, then. I think that possibly the box on the administrative form, which doesn't come from case law, is just a form that the administrative offices put together, may be a reference in Rule 41 to the fact that Rule 41 is talking about either trackers for things like vehicles or things like beepers that go in a box or whatever that's going to go on private property. But it says, I further request, for purposes of installing, maintaining, or removing the tracking device, authority to enter the following vehicle or private property or both, and it just lists the vehicle. Right. So there is... They could have said 1255 Cherry Tree Lane and therefore would have been able to go onto that property and put the device on this car, but they didn't ask for that, right? Right. So there's a couple of answers to that. The first is I actually think the box may have originally been aimed at, as in CARO, the issue of the box once you... There's no PC required to actually put the beeper in the box, but once it goes into private property, that's the issue. So I think that that's the origin of the box, potentially. That's the first issue. Second is when an officer knows what private property they might have to go onto in order to place a tracker on the car, then, yeah, the best practice would be to ask the magistrate for specific permission. But remember, private property isn't really the issue. You can have 15 acres of private property, and it doesn't mean you have 15 acres of cartilage. I'm not saying... All I'm saying is it doesn't give you anything more than what Collins would let you do, right? If you don't put anything else on this warrant, if you don't ask for permission to go onto the house or something, you get Collins, right? You get whatever else, or Hardinez, whatever else you could come up with that the Fourth Amendment would allow you to do. But you get the usual rule, which is that the manner in which officers execute a warrant is generally left to their discretion so long as it's reasonable. So, for instance, an officer who's going to execute an arrest warrant can go into a house where that officer has a reasonable belief that the person is. We all accept that as being true, right? That's a reasonable execution of a warrant. For a car that's being moved around and the officer doesn't know where it is, in this case, the officer testified at the hearing that there were four potential locations where they thought the car might be, where they thought Coleman might live. And so they didn't list all of those on the warrant. That would probably have raised particularity issues, and we'd be here talking about the particularity of the warrant. Let's not do that. Well, if we need to, we will. So what the officers are tasked to do is to behave reasonably in executing the warrant. And for the purposes of this case, I think it's an easy question. They went two feet on a driveway that was not cartilage, that they had an implied license to be anyway. And remember, this is a pre-Collins execution of this warrant. That doesn't matter. I mean, we're applying Collins here, right? Well, no, for good faith. For good faith. Down the road. Gallaby's controls, so the officers have good faith. But even you don't have to get to good faith. Here they executed this warrant. So it just boils back down to, I mean, when you say reasonable, I think we're talking about Fourth Amendment reasonable when they walk up that driveway. Right. And it just boils down to whether this driveway had sort of the same cartilage character that the driveway in Collins had, right? Sure. It's obviously distinguishable from Collins. Collins is a driveway that is enclosed on three sides. It's 30 feet up past the house, past the entrance to the house. And we're talking about there's a tarp over a motorcycle, and they would go up and lift the tarp. Right. Here we're talking about this driveway is indistinguishable from the driveway in Gallaby's. The car is parked between the driveway or between the garage and the road. There's no effort to maintain its privacy. I know that the appellant spends a great deal of time talking about the heightened privacy of this condominium complex as if it's like a nudist colony or something. That's obviously hyperbole. But there is a difference that this driveway is within private property. I mean, you can analogize the private property generally in the condo to be like an open field. But, I mean, if this were a driveway three-quarters of a mile into a farmer's open field, would folks feel free to walk, neighbors feel free to walk up there and put stuff on a pickup truck? Always, cartilage discussions are fact-bound. It's a hypothetical question. Sure. Yeah. So, I mean, if you look at Oliver, Oliver, they walked past a no trespassing sign around a gate over a, you know, to get to back into the open fields. I mean, they're no trespassing signs, which are what the appellant largely relies on here for this heightened notion of privacy. Private property is important. Private property is relevant, but not the question. But it's, you know, I wouldn't just kind of in a breezy fashion say, oh. Sure. But let's get back to also what was testified to about this neighborhood. At the suppression hearing, the officer testified this is a normal residential neighborhood. It's a condo complex. People drive in there all the time. There are tons of neighbors who are going to see that car in that place under the done factors. And again, done is another case where I think the officers, like, went over a fence and looked into a barn that was back from the road. There are, there is no, there are no heightened, there is no heightened privacy to this particular driveway as compared to any other residential neighborhood. And that's clear from the picture that, of the driveway. It's clear from the officer's testimony at the suppression hearing. Clearly, Judge Maloney credited it in his determination of whether or not there was cartilage. On the Dahlia case that you cite, was there some kind of a special warrant, permission to enter this office building to place the bug? So they had a Title III warrant to place the bug. But they didn't specifically request permission to enter into the building. So it's, in some respects, very similar to the question here in that they have the warrant. They're supposed to place it. And how do you reasonably affect that warrant? You affect it by going into the building to place the bug. There they actually entered into at least a very clearly enclosed space. Clearly private, clearly enclosed. With automobiles, I mean, the question for this court, there is not a lot of case law on what is allowed in terms of placing a GPS tracker. And the government would ask that the court expect that, or that the court hold that officers have to act reasonably. And with cars, the court has always held that under the automobile exception. Would the line you draw that you could reasonably go on to private property that's as long as you don't enter a curtilage? Or reasonably, I don't know, that would be sort of at least a rule statement. If you didn't go that far, how would you state it? Just reasonable and everything's up for grabs? Well, I think it has to be case by case. I think entering the curtilage, if you were to decide that this driveway were a curtilage, I think it would be reasonable for the officers to walk off of a public street onto a driveway to place this bug. Even into curtilage? Even into curtilage. Right. But conversely, if I want to go the other way, if I want to go in the end on your side, can I state the rule as they can do things as long as they don't go into the curtilage? Well, I think we would, you would say in this case. Cabin that more narrowly. I think that curtilage would be reasonable in some cases for placing a bug. I'm trying to go the other way. I'm sorry. We did not understand you. So you don't want to say, obviously you don't want to say beyond the curtilage is bad. You want to even go into the curtilage. But I'm saying suppose I won't give you that, do you want the rule to be short of the curtilage is okay? Or any other way of distinguishing it? I don't know whether there would be, I can't imagine a constitutional issue with anything short of the curtilage. I think the issue becomes the curtilage into a house even, into a garage. If the garage door is open and the officers see a car in a garage, that seems. You're trying to push me a lot further than you need to. Right. This case doesn't require that. So this court doesn't have to go that far. I don't think this court even has to get to that issue really in that this is clearly not curtilage. But I think we've explored that thoroughly. I do want to speak briefly at least to the warrant for the house. Just to make clear that there is a nexus here between the house that was searched and the PC for the warrant in this case. Specifically, the court can read the warrant for itself, and it will of course. But the last controlled by, officers have eyes on the vehicle as it leaves Mr. Coleman's residence. Was that by being inside the condo complex? It's not entirely clear from the record, and obviously you're limited to the four corners of the affidavit, but they must have been inside the condo complex. The only use of GPS tracking information in the warrant for the premises is they have actual surveillance of the vehicle leaving. So that's eyes on. And then they do see the GPS movement of the car from the condo to the location. There's no indication that they used their authority to get to that place. That is that whatever they did watching the house or the girlfriend could have been done by a bread truck or a political campaigner or something of that sort? They were in that neighborhood the same way that anyone else would be in that neighborhood. And of course that links that location to the drug buyer, the last controlled purchase of the three or four that are done in this case. In addition, obviously there's the records warrant portion of it, which adds to the PC for the premises warrant. Meaning the money laundering related evidence. I do want to speak briefly to the First Step Act issue that came up in the 28-G letter that we received a couple days ago. This is obviously very new. However, this court, or specifically Judge Kethledge, I believe rejected one of my colleagues' artistic impressionistic arguments in the Hughes case. I remember that one. Which is 733 F3rd 642 back in 2013. And there we weren't able to persuade the court that a statute that's silent about retroactivity should apply at resentencing. Here the statute is explicit. It applies only if the sentence has not yet been imposed. Here it has been. So the statute is explicit that it wouldn't apply at a resentencing. So that's the government's response on the First Step Act issue. I would also, with the court's indulgence, like briefly just to talk about whether exclusion is the proper remedy here. Since I don't think that was fleshed out. It was talked about in the briefs, but not fleshed out that well. This is an interesting case in that, as the courts sort of alluded to, they did have a warrant. And they didn't get any evidence that they weren't actually asked to get.  This isn't a case where they wandered into curtilage with some implied license and then saw a pile of cocaine and seized it. Here they actually had a warrant for the information that they got. And that makes suppression the inappropriate remedy in this case. Should the court find that there was any Fourth Amendment violation to begin with. Unless the court has further questions, the government will submit the matter. Thank you for your argument. Thank you. Your Honors, there's a lot I hope I can address in five minutes. But one of the things is going back to that box in the distinction. I think that it's not that simple. We've got several circumstances where I can think of that we have constitutional protections within protections that we require separate warrants or separate authorizations. I don't remember all the details, but quite a while ago I litigated a knock and announce violation. Obviously, if you want to forego knocking and announcing to execute a warrant, you have to get permission to do that. If you want to affect a search in a home, you can't use the arrest warrant to do it. My colleague from the U.S. Attorney's Office talks about making an arrest in a home. But that does not grant the license to ransack that home. In other words, they had a warrant that was based on probable cause to think that the vehicle was being used in some sort of illicit activity. But in order to intrude upon curtilage to put the tracker on the vehicle, if I understand you, you're saying they would need to show probable cause that that home was also being used in illicit activity. Otherwise, you can't intrude on the home for purposes of intruding on the vehicle. Yes, Your Honor. Is there any case law? I mean, that's an interesting distinction. Is there any case law? If I had it, I would cite it for you, Your Honor. I don't. It's kind of a somewhat new area. And I do think that this case... But at a minimum, they can do whatever Collins would allow them to do, right? In a public place, yes. Or if it's not curtilage. But if they're consistent with Oliver, with Collins, with all of the Fourth Amendment reasonableness cases, right, that would be okay, right? Yes, I think I understand what you're saying. Like if the car were parked on the public street spot and they put the GPS tracker on. Yes, if they don't intrude on the curtilage, if they don't violate... If it's in a driveway that's not curtilage, that would be okay. I guess I have trouble conceiving of a driveway that would not be curtilage under Collins. And again, I know that the test is fluid, but I think that most driveways are probably going to be curtilage now. Or are curtilage. Well, didn't they kind of make a big deal about the brick wall? I think there's... I mean, was this just sort of embroidery for them? In some ways. And I think that's where Justice Alito helps kind of flesh some of that out. And it is hard, I think, to visualize with the spoken word. But my feeling of that wall is it's a small kind of garden, almost a decorative wall, kind of just delineating the car spot from where the grass might grow kind of thing. But just to get into the weeds there, the motorcycle, there's the house on one side. I mean, that's a big thing, right? The house is on one side, and then you've got these two walls that we can argue about how tall they are. Is that fair? Yes. Okay. Yes. And I think, actually, that brings me... Things being up against a house seems a lot more like curtilage than things being down a driveway. I do think that there is some idea that the closer the space is to the house, the more unequivocally it's private extension of that home. But when I think of, like, going out to walk the dog in the morning in my pajamas or drinking my cup of coffee and getting the paper, that space that I would inhabit would still be curtilage because I'm going out unmade up in my PJs, you know, with a certain expectation of privacy. A neighbor walks down the sidewalk and trips over three feet onto your driveway. Is intruding on your curtilage? Well, again, there we get the license issue. There we get a tripping neighbor or a Girl Scout selling cookies. There's that implied license from Hardina's. And I think that Bonilla helps. And that's one of the cases I cited in that recent World 28 letter from the Illinois Supreme Court. Kind of interpreting and crunching down Hardina's, crunching down some of this other recent Fourth Amendment case law, and also finding no good faith to save their intrusion into an unlocked common space in an apartment building. This was a really short driveway, right? Yes. In those pictures, it's a very short driveway. It's curtilage. You know, one could ask, I mean, if where the vehicle was isn't curtilage, then there's no curtilage, basically, to this home. I mean, one could make an argument. One could make the argument. I don't think I can concede that here. Well, no. I mean, it would be an argument in your favor. Yes, yeah. But a few things just in the short time I have left. One thing my colleague had also mentioned was that she felt there might be license to even go into our garage. I think that ZAP in another of those cases I cited in the letter goes into the limits on this. And absolutely, that district court did not think there would be license to go into a garage. I see I've got five seconds. Thank you, Your Honors. Thank you both for your arguments.